UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                      :

In re:                                           :     Chapter 11

COUDERT BROTHERS LLP,            :     Case No. 06-12226(RDD)

                            Debtor.    :
-----------------------------------------------------------x

Appearances:

KLESTADT & WINTERS, LLP, by Tracy L. Klestadt, Esq., for the Debtor

MILES & STOCKBRIDGE, P.C., by John E. Prominski, Esq., for Almaty Metro-Municipal Corporation (Kazakhstan), Almaty Metro-Municipal Corporation (U.S.), and Intercontinental Commerce Corporation

**MEMORANDUM OF DECISION ON MOTION BY ALMATY METRO-MUNICIPAL CORPORATION (KAZAKHSTAN), ALMATY METRO-MUNICIPAL CORPORATION (U.S.), AND INTERCONTINENTAL COMMERCE CORPORATION TO COMPEL ABANDONMENT OF <u>PROPERTY BY THE DEBTOR IN POSSESSION</u>**

ROBERT D. DRAIN, United States Bankruptcy Judge:

        The debtor and debtor in possession ("Coudert" or the "Debtor") is a law firm in liquidation. Having voted to begin winding down its practice on August 16, 2005, it sought relief under chapter 11 of the Bankruptcy Code on September 22, 2006. On August 6, 2007, Almaty Metro-Municipal Corporation (Kazakhstan), Almaty Metro-Municipal Corporation (U.S.), and Intercontinental Commerce Corporation (collectively, "Almaty"), former Coudert clients apparently under common ownership, filed a motion to compel the Debtor to abandon and turn over Almaty's original corporate documents (the "Corporate Documents") and corporate seals (the "Corporate Seals;" with the Corporate Documents, the "Client Property") pursuant to Fed. R. Bankr. P. 6007(b) and sections 105(a) and 554(b) of the Bankruptcy Code. 11 U.S.C. §§ 105(a), 554(b).

The Debtor objected to Almaty's motion primarily on the basis that it asserts a retaining lien on the Client Property to secure a large account receivable for unpaid legal fees and expenses. Almaty responded that the District of Columbia's Rules of Professional Conduct ("DC Bar Rules") preclude the enforcement of such a lien and, in any event, to the extent the Debtor has such a lien, require turnover of the Client Property to avoid the significant risk of Almaty's irreparable harm.

The Court held an evidentiary hearing on August 27, 2007. Rather than close the hearing, however, the Court requested additional submissions regarding an apparent ambiguity in the DC Bar Rule upon which the parties had focused.

Having now reviewed the parties' supplemental memoranda and considered other relevant authorities, the Court concludes that the Debtor must release to Almaty (a) the Corporate Seals and (b) all Corporate Documents that are not Coudert's work product. In addition, Coudert must release any Corporate Documents constituting attorney work product if Almaty establishes that Coudert's retention of such Corporate Documents subjects Almaty to significant risk of irreparable harm. The Court will finish the evidentiary hearing -- limited, however, to issues of what constitutes "work product" and "Almaty's significant risk of irreparable harm" for purposes of the DC Bar Rules -- if the parties cannot resolve those issues between themselves in light of this Memorandum.

**Facts**

From at least January 2004 through September 2005, Coudert represented Almaty, including in connection with the proposed financing and construction of a monorail in Almaty, Kazakhstan. Coudert's services were performed in Kazakhstan and perhaps in Washington, D.C., and Coudert held the Client Property primarily, if not

entirely, in Kazakhstan, although some also may have been maintained in Washington, D.C. Almaty's president and CEO, Ekrm J. Miller, testified that the Corporate Seals and "corporate books" were consistently kept in Coudert's office in Kazakhstan and that he left them in the custody of Tom O'Brien, Coudert's resident partner there and Mr. Miller's primary contact, even after Mr. O'Brien told him that Coudert was going out of business. Aug. 27, 2007 Tr. 106, 112.[1] Mr. Miller testified that he understood Mr. O'Brien eventually would move to another firm and that he would bring the Client Property with him, subject to Almaty's ability to get it back at any time. Id. at 106.[2]

It turned out, however, that because progress stopped on the monorail project for reasons unrelated to Coudert, Almaty did not need any of the Client Property until recently. Id. at 107. Now, however, the project is restarting, id., and Almaty convincingly contends that it must affix the Corporate Seals to various documents, including proposed financing agreements, for those documents to be binding. Id. It also contends that it requires its "corporate books" to conduct its revived business, id., which the Court also accepts, if by "corporate books" Almaty means its formal organizational documents and minute books. Almaty has not identified any other Client Property that it presently requires to conduct its business.

Soon after seeking chapter 11 relief, the Debtor began an adversary proceeding against Almaty to collect unpaid prepetition legal fees and expenses of not less than $1,281,706.38. Almaty's answer does not dispute that this sum is unpaid but denies that it is owed and asserts various defenses including that the three Almaty entities

---

[1] It is not entirely clear whether the Client Property has since been moved out of Kazakhstan, but both parties agree that the Debtor controls it.

[2] The Debtor reserved the right to rebut this statement by calling Mr. O'Brien, id. at 111, but in light of the basis for the Court's ruling on Almaty's motion this is unnecessary.

3

are not jointly liable for the fees but only for their respective portions, that "some" of the alleged services for which Coudert seeks compensation were outside the scope of the legal representation for which it had been retained, and that "some or all" of such services were unnecessary and excessive or barred by various alleged impediments such as conflicts of interest, unclean hands, waiver and estoppel, breach of Coudert's professional obligations, and novation. The issues raised by the adversary proceeding have not been decided, but, notwithstanding the artful "some or all" pleading in Almaty's answer, it appears that each of the Almaty entities owes at least some amount to the Debtor for unpaid legal fees and expenses.

On notice to Almaty, among other former clients, the Debtor also moved relatively early in its chapter 11 case (the "Client File Motion") for an Order Approving and Authorizing Implementation of Procedures for Disposition of Certain Retained Client Files, which the Court entered on January 22, 2007. The Client File Motion expressly "reserve[d] the [Debtor's] right to withhold [any] Retained Client File if the Debtor maintains a claim against the former client for counsel [fees]." Client File Motion ¶ 39.

There is an unsigned retention agreement between Coudert and Almaty with a Washington, D.C. choice of law provision, which Almaty relies upon for asserting that Washington, D.C. law governs this dispute (which the Debtor does not contest). Neither in this retention agreement nor apparently in any other document did Almaty grant Coudert a security interest; the Debtor relies solely upon a common law retaining lien to justify its refusal to return the Client Property.[3] As noted above, however, Almaty

---

[3] In addition, the Debtor contends that the order granting the Client File Motion bars Almaty from challenging the Debtor's retention of the Client Property. This argument, however, ultimately circles back to the Debtor's reservation of rights, quoted above, to retain files of former clients who have not paid their bills. Clearly, though, such a reservation of rights cannot preclude Almaty from contesting the reserved

4

contends that the DC Bar Rules have drastically narrowed the scope of any retaining lien that Coudert might be able to assert, and a retaining lien surviving the Rules' promulgation is, in any event, defeated by Almaty's need for the Corporate Seals and "corporate papers."

### Discussion

A. <u>The Common Law Rule.</u>  Before the adoption of the DC Bar Rules, absent an agreement to the contrary, attorneys in the District of Columbia could assert an enforceable common law retaining lien on any client property in their possession for unpaid legal fees and expenses.  <u>Beardsley v. Cockerell</u>, 240 F. Supp. 845, 848 (D. D.C. 1965); DC Bar Legal Ethics Comm. Op. 230 (September 15, 1992) ("DC Bar Opinion 230").  Such a "retaining lien attaches to property of the client in the possession of the attorney and entitles the attorney to retain possession of that property until the fee is paid."  <u>Wolf v. Sherman</u>, 682 A.2d 194, 197 (D.C. 1996); <u>see also</u> <u>In re Hines</u>, 482 A.2d 378, 380 n.7 (D.C. 1984).  It is a "retaining" lien because "the attorney can take no steps to realize upon the property so held to satisfy the unpaid fee; the only effect of the 'lien' is to permit the attorney to bring pressure upon the client by withholding possession of the property in question."  <u>Wolf v. Sherman</u>, 682 A.2d at 197, n. 8.

B. <u>The DC Bar Rules.</u>  The DC Bar Rules, adopted in 1991, modified the common law retaining lien, however.  <u>In re The Greater Southeast Comm. Hosp. Foundation, Inc.</u>, 2001 Bankr. LEXIS 1780, *5 (Bankr. D. D.C., June 11, 2001).  DC Bar Rule 1.8(i), applicable to the present dispute, provides

---

right.  It merely clarifies what was clear in any event:  a former client cannot argue that by seeking an order permitting the disposition of client files -- the primary focus of the Client File Motion and the only aspect of that motion specifically dealt with by the January 22, 2007 order -- the Debtor waived whatever rights it had to retain files if it chose to do so.

5

> A lawyer may acquire and enforce a lien granted by law to secure the lawyer's fees or expenses, but a lawyer shall not impose a lien upon any part of a client's files, except upon the lawyer's own work product, and then only to the extent that the work product has not been paid for. This work product exception shall not apply when the client has become unable to pay, or when withholding the lawyer's work product would present a significant risk to the client of irreparable harm.

DC Bar Rule 1.8(i).

One change to the common law rule is clear from a plain reading of DC Bar Rule 1.8(i): a retaining lien on attorney work product in a client file will no longer prevail against a client's turnover demand if withholding the work product "would present a significant risk to the client of irreparable harm." Id. Given that the only value of a retaining lien is the leverage accorded an attorney when the client needs something in the attorney's possession, DC Bar Rule 1.8(i) arguably therefore renders retaining liens on client files meaningless. The client will pay the bill only if it sorely needs the work product that the attorney was withholding, and, now, such need compels turnover. The Rule nevertheless adopts the work product/risk of irreparable harm formulation, rather than simply abolishes retaining liens, for at least one good reason -- to prevent clients from overburdening their attorneys with having to turn over useless documents. See DC Bar Legal Ethics Comm. Op. 283 (July 15, 1998) ("DC Bar Opinion 283"); see also Johnson v. United States, 616 A.2d 1216, 1237 (D.C. 1992). The Rule also has the effect of preventing clients from obtaining information outside of normal discovery procedures that could be used in disputes with their attorneys (a relevant consideration here, where the Debtor and Almaty are in litigation over the amount of Coudert's bill and Almaty has asserted possible setoffs). In addition, the value to a client of obtaining work product conceivably may exceed the amount of its bill but the consequences of withholding the

6

work product may not rise to the level of a significant risk of irreparable harm; thus, DC Bar Rule 1.8(i) preserves some limited leverage for attorneys to argue in good faith about what constitutes work product in a client's file and whether the refusal to turn it over will lead to the type of harm contemplated by the Rule.

What is less clear from the plain language of DC Bar Rule 1.8(i), however, is what it means by the term client's "file." This issue arises from how the Rule is structured. DC Bar Rule 1.8(i)'s introductory clause states, "A lawyer may acquire and enforce a lien granted by law to secure the lawyer's fees and expenses." That is, it confirms the validity of common law retaining liens. Why else use the phrase "lien granted by law" (as opposed to, for example, "lien agreed by the parties")? Then it states an exception to the common law retaining lien, prohibiting lawyers from imposing "a lien upon any part of a client's files."[4] That formulation suggests that lawyers may have a retaining lien on client property <u>other</u> than the client's "files." Otherwise, why not state simply, for example, "A lawyer may enforce a lien granted by law to secure the lawyer's fees and expenses only on the lawyer's work product, except when the client has become unable to pay, or when withholding the lawyer's work product would present a significant risk to the client of irreparable harm"?

The Official Commentary to DC Bar Rule 1.8(i) highlights the apparent distinction between client "files," upon which a retaining lien cannot be asserted, with the exception of work product, and other "client property" in the attorney's possession:

---

[4] And then, as discussed above, Rule 1.8(i) provides an exception to this exception, for "the lawyer's own work product" (except if the client has become unable to pay or withholding such work product poses a significant risk of irreparable harm to the client). Almaty has not yet established that it is currently unable to pay the amount it owes; given the basis for the Court's ruling, however, this issue is in all likelihood moot.

7

> [DC Bar] Rule 1.16(d) requires a lawyer to surrender papers and property to which the client is entitled when representation of the client terminates. [DC Bar Rule 8.1(i)] states a narrow exception to 1.16(d): <u>a lawyer may retain anything the law permits -- including property -- except for files</u>. As to files, a lawyer may retain only the lawyer's own work product. . . . Furthermore, the lawyer may not retain the work product for which the client has not paid, if the client has become unable to pay or if withholding the work product might irreparably harm the client's interest.

Official Comment to DC Bar Rule 1.8, ¶ 17 (emphasis added). See also DC Bar Legal Ethics Comm. Op. 250 (October 18, 1994) ("DC Bar Opinion 250"), note 1, which states "Rule 1.8(i) does not address the question of when a lawyer may assert a retaining lien against client property other than files in the lawyer's possession; that issue is presumably governed by statutory or common law of the jurisdiction."

On the other hand, the next Official Comment to Rule 1.8(i) arguably abandons a distinction between client property and client files and in any event provides no guidance on how to distinguish the two concepts:

> Under Rule 1.16(d), for example, a lawyer would be required to return all papers received from a client, such as birth certificates, wills, tax returns, or 'green cards.' Rule 1.8(i) does not permit retention of such papers to secure payment of any fee due.

Official Comment to DC Bar Rule 1.8, ¶ 18. Further, DC Bar Opinion 250 also recognizes that "retaining liens on client files are now strongly disfavored in the District of Columbia, [and] the work product exception permitting such liens should be construed narrowly, . . ." and concludes that the attorney at issue should turn over, among other things, "files containing copies of applications filed with the FCC and amendments and correspondence relating to those applications -- also filed with the FCC," which might be analogized to the Corporate Seals and "corporate books." Nor, contrary to the Debtor's suggestion, does recourse to <u>Black's Law Dictionary</u>, which defines a "file" as "[a] lawyer's complete record of a case," <u>Black's Law</u>

8

Dictionary 660 (8th ed. 2004), shed much light. In sum, therefore, it is fair to say that DC Bar Rule 1.8(i) is ambiguous, or, perhaps more aptly, makes an unclear distinction between client files and other property.

Further research shows, however, that, as construed in the District of Columbia, DC Bar Rule 1.8(i) clearly precludes Coudert's retention of the Corporate Seals and "corporate books." In short, in addition to construing attorney work product narrowly, so that it would not extend to the foregoing Client Property, neither the courts nor the DC Bar Ethics Committee read DC Bar Rule 1.8(i) to create a distinction between client "files" and other property in an attorney's possession, notwithstanding how the Rule may be parsed. To the contrary, unless subject to the claim of a third party, any property of a client in an attorney's possession is, under the law of the District of Columbia, viewed as part of the "entire file" and, with the exception of work product, subject to turnover to the client notwithstanding an unpaid bill for services performed while the material was received. In re Douglass, 859 A.2d 1069, 1077-1078, 1085-1086 (D.C. 2004) (file comprising "property, reports and bills" could not be retained); In re Ryan, 670 A.2d 375, 380 (D.C. 1996) ("Since the labor certification documents do not belong to [attorney], and since her clients had a plausible and uncontested ownership interest in them, [attorney] was under an obligation to return them upon request."); see also DC Bar Opinion 283 (defining "client file" expansively to include all property held by attorney).

Given that expansive definition of the client's file, DC Bar Rule 1.8(i) prohibits an attorney from asserting a retaining lien on a client's property in its possession, with the exception of work product under the limited circumstances discussed above. See DC Bar Opinion 230 (DC Bar Rule 1.8(i) "unequivocally" precludes retaining lien on, and requires turnover of, "original promissory notes and letter of credit, as well as any other documents in the

9

file that are not [attorney's] work product").  See also In re Douglass, 859 A.2d at 1085, 1086 (attorney would not be able to maintain a retaining lien on medical reports and other property and papers in his possession); In re Bernstein, 707 A.2d 371, 376 (D.C. 1998) (attorney must surrender all client property except work product); In re Ryan, 670 A.2d at 380 (retaining lien could not be asserted on labor certifications and other client property in file).

Here, neither the Corporate Seals nor the "corporate books," as defined above, fit the DC Bar Rules' narrow definition of attorney work product and, therefore, must be turned over to Almaty under DC Bar Rule 1.8(i).

## Conclusion

For the foregoing reasons, the Debtor should promptly provide for the release to Almaty of the Corporate Seals and "corporate books," as defined above, under its control.  If Almaty requests other Corporate Property in the Debtor's possession, the Debtor should promptly identify any such property that in good faith constitutes attorney work product and turn over all other requested Client Property, subject to the January 22, 2007 order granting the Client File Motion.  If the parties dispute the Debtor's identification of work product or whether the failure to release such claimed work product will subject Almaty to a significant risk of irreparable harm, they should promptly seek to continue the hearing on Almaty's motion, limited to those issues and, if relevant, Almaty's current ability to pay the amount owing.  Otherwise the hearing will be deemed closed.

Almaty's counsel should submit an order consistent with this Memorandum

Dated:  New York, New York            ____/s/Robert D. Drain_____
       November 21, 2007                    United States Bankruptcy Judge