Hearing Date: August 19, 2008
Hearing Time: 10:00 a.m.

McCARTER & ENGLISH, LLP
245 Park Avenue
27th Floor
New York, New York 10167
(212) 609-6800 - Telephone
(212) 609-6921 - Facsimile
David J. Adler (DA-0048)
Georgia A. Mallan (GM-2596)
dadler@mccarter.com
Attorneys for the Official Committee of Unsecured
Creditors of Coudert Brothers LLP

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| COUDERT BROTHERS LLP, | : | Case Nos. 06-12226 (RDD) |
| | : | |
| Debtor. | : | |
| | : | |

**STATEMENT OF THE COMMITTEE IN SUPPORT OF DEBTOR'S
MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 502(c) ESTIMATING
THE GENERAL UNSECURED CLAIM VALUE OF CLAIM NOS. 198, 342
AND 348 FILED BY THE RETIRED PARTNERS OF COUDERT BROTHERS LLP
TRUST AND OTHERWISE DETERMINING THE CLASSIFICATION AND
ENTITLEMENT OF THE SAME CLAIMS IN ACCORDANCE WITH THE PLAN**

The Official Committee of Unsecured Creditors (the "Committee") of Coudert Brothers LLP ("Coudert", or the "Debtor"), by and through its counsel, hereby submits this statement in support of the Debtor's Motion for an Order Pursuant to 502(c) of the Estimating the Value of Claim Nos. 198, 342 and 348 filed by the Retired Partners of Coudert Brothers LLP Trust (the "RPCB Trust") And Otherwise Determining The Classification And Entitlement Of The Same Claims In Accordance With the Plan (ECF Doc. #751). In support of the Application, the Committee respectfully represents as follows:

ME1 7635741v.1

**PRELIMINARY STATEMENT**

Although the amounts allegedly owed to each of the members of the RPCB Trust remains unknown due to the fact that the RPCB Trust has failed to file a Rule 2019(a) Statement, the RPCB Trust has asserted that it has a claim in excess of $20 million against the Debtor. According to the RPCB Trust, the basis for that claim against the Debtor is set forth in an Amended Complaint which has been filed against parties other than the Debtor. The Debtor has requested that the Court estimate the RPCB Trust claim at zero for purposes of voting and allowance.

As set forth herein, the contract claims asserted by the RPCB Trust are clearly derived from profits of the Debtor and should thus be estimated at zero or reclassified as Class 6 - Partner Profit Claims under the Plan. With respect to the tort claims asserted by the RPCB Trust, the Court should conclude that all of those claims are property of the estate. As such, the RPCB Trust cannot individually assert those claims. Accordingly, those claims should be estimated at zero for purposes of voting and allowance.

**RETIREMENT INCOME**

1. A partnership agreement dated December 31, 2004 (see ECF Doc. #291, Exhibit B) governed the affairs of the Debtor. For purposes of estimation, the following provisions of the Partnership Agreement are relevant. Schedule 5 of the Partnership Agreement states that retirement income is based upon a certain allocation of his or her Profit Shares[1]. Article 6.j of the Partnership Agreement states that:

> profits shall be allocated among the Partners in accordance with the following priority…

---

[1] "Profit Share" is defined as "an interest in the profits and losses of the Partnership for any period equal to the fraction determined by dividing one (i) by the total number of Profit Shares allocated to all Partners during such period as defined in the Partnership Agreement."

2

      i.      Allocations (other than Profit Shares) to lateral Equity Partners pursuant to an agreement requiring a separate accounting of profits and losses for such Equity Partners;
      ii.      Guaranteed Payments to Partners;
      iii.      Allocation (other than Profit Shares) to Contract Partners;
      iv.      Payments on interest on capital;
      v.      Allocation of Retirement Income pursuant to Schedule 5 ….

Article 9 of the Retirement Agreement provides that "[i]n no event shall the aggregate Retirement Income Payments with respect to profits of the Partnership for any calendar year exceed twelve and one-half percent (12-1/2%) of the profits if the Partnership for such year."

## THE RPCB TRUST

2.      The RPCB Trust has asserted that pursuant to a written agreement dated June 6, 2006 (the "Trust Agreement"), twenty-four retired partners of the Debtor assigned their interests to the RPCB Trust. To date, counsel for the RPCB Trust has not produced a fully executed version of the Trust Agreement.[2] Emilio A. Dominianni, Mark Lebow and Anthony Kahn are the Trustees of the RPCB Trust.

3.      The RPCB Trust has filed three claims (the "RPCB Trust Claim") against the estate. On January 30, 2007, Claim No. 198 was filed on behalf of the RPCB Trust asserting an unsecured claim against the Debtor in the amount of $20,007,000. On or about March 28, 2007, the RPCB Trust filed its First Amended Proof of Claim [Claim No. 342] and attached a complaint filed against various parties. On or about May 10, 2007, the RPCB Trust filed its Second Amended Proof of Claim [Claim No. 348]. The only change was to attach the Amended Complaint (as defined herein).

---

[2] On August 14, 2008, the RPCB Trust produced twenty three signatories; however, four of those (Messrs. Aden, Benton, Beharrel and Nee) have become Participating Partners and, pursuant to the Participating Partner Settlement Agreement, represented that: (i) they will not object to confirmation; (ii) that they assign all rights to the Plan Administrator and (iii) they have not previously assigned any of their claims against the Debtor.

ME1 7635741v.1

## THE AMENDED VERIFIED COMPLAINT

4. On May 4, 2007, the RPCB Trust filed an amended verified complaint (the "Amended Complaint") against the following parties: Eric P. Deltour, Lance Miller, Darrell Prescott, Clyde Rankin, Christopher Stephens, Jingzhou Tao, Edward Tillinghast (the "EC")[3]; Anthony Williams, Andrew Hedden, Frederick Konta (the "SSC")[4] and Baker & McKenzie LLP, Orrick Herrington & Sutcliffe, DLA Piper and Dechert LLP (the "Law Firms"[5]; the SSC, EC and the Law Firms are referred to herein as the "Defendants"). The core allegations of the Amended Complaint assert that the Defendants engaged in a deliberate scheme of mismanagement, waste and breach of fiduciary duty in the 13 month period between the Debtor's decision on August 16, 2005 to wind-down and the filing for bankruptcy protection on September 22, 2006 and that the EC and the SSC engaged in acts of deliberate bankruptcy planning to shield partners from liabilities.

5. The Amended Complaint asserts Ten Causes of Action as follows:

Count 1 - Breach of Contract against the EC and SSC under the Partnership Agreement.

Count 2 - Breach of Fiduciary Duty against the EC and SSC.

Count 3 - Common Law Breach of Fiduciary Duty against the EC and SSC.

Count 4 - Constructive Trust as to the interests of the EC and SSC in the Law Firms.

Count 5 - Tortious Interference against the Law Firms.

Count 6 - Conspiracy against all Defendants.

Count 7 - Successor Firm Liability against the Law Firms.

---

[3] All members of the EC have become Participating Partners under the Plan with the exception of Mr. Tao.
[4] All members of the SSC have become Participating Partners under the Plan.
[5] Pursuant to Sections 7.4(b)(iii) and 7.5(b)(iii) of the Plan, the release and injunction will not apply to the Law Firms.

4

Count 8 - Unjust Enrichment against all Defendants.

Count 9 - Accounting against Baker & McKenzie.

Count 10 - Accounting against the Law Firms.

### THE RPCB TRUST HAS FAILED TO FILE A VERIFIED STATEMENT AND OTHERWISE COMPLY WITH BANKRUPTCY RULE 2019(b)

6.   Rule 2019(a) of the Federal Rules of Bankruptcy Procedure provides that:

> In a chapter 9 municipality or chapter 11 reorganization case, except with respect to a committee appointed pursuant to § 1102 or 1114 of the Code, every **entity** or committee representing more than one creditor or equity security holder and, unless otherwise directed by the court, every indenture trustee, shall file a verified statement setting forth (1) the name and address of the creditor or equity security holder; (2) **the nature and amount of the claim or interest and the time of acquisition thereof** unless it is alleged to have been acquired more than one year prior to the filing of the petition; (3) a recital of the pertinent facts and circumstances in connection with the employment of the entity or indenture trustee, and, in the case of a committee, the name or names of the entity or entities at whose instance, directly or indirectly, the employment was arranged or the committee was organized or agreed to act; and (4) with reference to the time of the employment of the entity, the organization or formation of the committee, or the appearance in the case of any indenture trustee, the amounts of claims or interests owned by the entity, the members of the committee or the indenture trustee, the times when acquired, the amounts paid therefor, and any sales or other disposition thereof. The statement shall include a copy of the instrument, if any, whereby the entity, committee, or indenture trustee is empowered to act on behalf of creditors or equity security holders. A supplemental statement shall be filed promptly, setting forth any material changes in the facts contained in the statement filed pursuant to this subdivision.

Federal Rule of Bankruptcy Procedure 2019(a)(emphasis supplied).

7.   Pursuant to Section 101(15) of the Code, entity "includes person, estate, trust, governmental unit, and United States trustee." Thus, the RPCB Trust is an entity and, as such, was required to file a verified statement. <u>Wilson v. Valley Electric Membership Corp.</u>, 141 B.R., 309, 314 (E.D.La.1992)("Rule 2019 ... seems to apply to the formal organization of a group of

5

creditors holding similar claims, who have elected to consolidate their collection efforts...."). It has not done so to date.

8. In In re Northwest Airlines Corporation, 363 B.R. 701 (Bankr. S.D.N.Y. 2007), Judge Gropper found that Bankruptcy Rule 2019 applies to ad hoc committees and ordered that committee to file a supplemental 2019 Statement which included, among other things, "**the amounts of their claims or interests owned by members of the committee, the times when acquired, the amounts paid therefore, and any sales or dispositions thereof....**" Id. at 701. (emphasis supplied).

9. The RPCB Trust should have previously filed such a verified statement indicating the amount of each member's claim. At present, there is no evidence (other than unsupported statements in the Amended Complaint) which demonstrates the calculation of the alleged claim for $20 million. It is unknown whether the amount of the claim included those former partners who did not sign the Trust Agreement.[6] In any event, however, it is likely that the amount of the RPCB Trust Claim consists of the four Participating Partners who have agreed to waive their claims against the estate.

10. Rule 2019(b) provides the remedy for failure to file a Rule 2019(a) Statement:

> On motion of any party in interest or on its own initiative, the court may (1) determine whether there has been a failure to comply with the provisions of subdivision (a) of this rule or with any other applicable law regulating the activities and personnel of any entity, committee, or indenture trustee or any other impropriety in connection with any solicitation and, if it so determines, the court may refuse to permit that entity, committee, or indenture trustee to be heard further or to intervene in the case; (2) examine any representation provision of a deposit agreement, proxy, trust mortgage, trust indenture, or deed of trust, or committee or other authorization, and any claim or interest acquired by any entity or committee in contemplation or in the course of a case under the Code and grant appropriate relief; and (3) hold invalid any authority,

---

[6] Included in the non-signatories are Freemantle, Hoffman, OBrien and Stark who have elected to become Participating Partners.

6

ME1 7635741v.1

>   acceptance, rejection, or objection given, procured, or received by an entity or committee who has not complied with this rule or with § 1125(b) of the Code.

Federal Rule of Bankruptcy Procedure 2019(b).

11.  Due to the failure of the RPCB Trust to file a Rule 2019(a) Statement, the Committee requests that the Court strike the vote of the RPCB Trust pursuant to section 1126(e) of the Bankruptcy Code and Rule 3018(c) which provides that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder **or an authorized agent**, and conform to the appropriate Official Form." Rule 3018(c) (emphasis supplied).  The failure to file a Rule 2019(a) Statement demonstrates that the RPCB Trust is not the authorized agent for all of the members of the RPCB Trust and as a result the ballot should be stricken.

12.  Alternatively, the Committee requests that the Court determine that, as a result of the failure of the RPCB Trust to file a Rule 2019(a) Statement, the RPCB Trust cannot be deemed to be a party in interest.  This is consistent with Judge Lifland's holding in In re Ionosphere Clubs, Inc., 101 B.R. 844 (Bankr. S.D.N.Y. 1989).  In that case, Consumers' Union ("CU") filed a motion to compel the debtor to adopt a refund procedure for prepetition ticket holders.  Judge Lifland denied the motion because it determined that CU was not a "party in interest" with a right to be heard pursuant to section 1109 because it did not satisfy requirements of Rule 2019.

13.  In so ruling, Judge Lifland noted that to "be an authorized agent of a multiple grouping, Bankruptcy Rule 2019 requires that every person purporting to represent more than one creditor in a Chapter 11 case "file a verified statement setting forth the names and addresses of the creditors, the nature and amount of the claims and the relevant facts and circumstances

7

surrounding the employment of the agent." Id. at 852 (Bankr. S.D.N.Y. 1989).  Furthermore, "[o]nly when an agent has **express authorization** may he file a claim on behalf of another." Id.  In that case, CU received and filed specific authorization for only eight such individuals which totaled $6,000, yet CU's motion contemplated a reimbursement plan on behalf of all prepetition ticket holders in the amount of $20 million.  The court found that such evidence "does not meet Bankruptcy Rule 2019 requirements in that (1) not all ticketholder claimants or creditors have given their express authorization to CU; and (2) even where authorization was given, only three individuals have specified the amount of their claims."  Judge Lifland noted that if CU is to properly act "as an agent … , it needs to show that this general agency relationship is consensual in nature." Id. (agency relationship exists only if there has been a manifestation by the principal to the agent that the agent may act on his account)(citing In re Baldwin-United Corp., 52 B.R. 146, 148 (Bankr. S.D.Ohio 1985)).  Absent such consent, an agent "may not legitimately represent the interest of individuals." Id.

14.    In this case, there are similar questions about the agency relationship and whether the RPCB Trust has "express authorization" to vote to reject the plan and object to confirmation.[7]  As previously noted, Messrs. Aden, Benton, Beharrel and Nee have each elected to become Participating Partners and have agreed to release claims against the estate and not object to confirmation.  Nonetheless, the RPCB Trust on behalf of those individuals objected to confirmation.

## AS A MATTER OF LAW, THE CLAIM OF THE RPCB TRUST CAN BE ESTIMATED AT ZERO

15.    The RPCB Trust has stated on numerous occasions that "[t]he Causes of Action set forth in the Amended Complaint form the basis of the Trust Claim against the Debtor…."

---

[7] The fact that Rule 2019(a) Statement must be verified indicates the importance that the drafters of this Rule placed on having complete disclosure and the potential penalties associated therewith.

ME1 7635741v.1

See RPCB Trust Opposition to Debtor's Motion to Stay (ECF Doc. #372) at ¶¶23, 25; RPCB Opposition to Estimation Motion (ECF Doc. #800) at ¶26. Accordingly, for purposes of estimation, the Court should consider only those allegations set forth in the Amended Complaint.

16. Of the ten causes of action in the Amended Complaint, only the first count is contractual in nature and alleges that the SSC and the EC breached their contract with the Retired Partners. As a matter of law, the Court can estimate the value of these contract claims at zero for purpose of voting and allowance or reclassify this claim to a Class 6 Partner Profit Claim.

17. The retirement agreement (Schedule 5 to the Partnership Agreement) guarantees certain "Retirement Income" to an equity partner upon his or her retirement and is paid out of profits of the Debtor. The amount of retirement income which an equity partner is entitled to is directly dependent on such equity partner's profit shares prior to retirement.

18. Article 6.j of the Partnership Agreement states that:

profits shall be allocated among the Partners in accordance with the following priority…

i. Allocations (other than Profit Shares) to lateral Equity Partners pursuant to an agreement requiring a separate accounting of profits and losses for such Equity Partners;
ii. Guaranteed Payments to Partners;
iii. Allocation (other than Profit Shares) to Contract Partners;
iv. Payments on interest on capital;
v. Allocation of Retirement Income pursuant to Schedule 5 ….

It follows from Article 6.j that if the Debtor has no profits, then there are no distributions on account of retirement income. This is bolstered by Article 9 of the Retirement Agreement which provides that "[i]n no event shall the aggregate Retirement Income Payments with respect to profits of the Partnership for any calendar year exceed twelve and one-half percent (12-1/2%) of the profits if the Partnership for such year."

19. Because the amount of retirement income is directly dependent upon a partner's profit shares, any contract claims of the RPCB Trust against the Debtor should be estimated at

9

zero or reclassified as Class 6 Partner Profit Claims under Section 1.76 of the Plan. See In re Labrum & Doak, LLP, 227 B.R. 372, 381 (Bankr. E.D. Pa. 1998)("[retired partner's] claim arising from his capacity as a former partner is an "interest"). In Labrum, a retired partner objected to the plan because, among other things, unsecured creditors were scheduled to receive a distribution prior to the retired partner's claims for withdrawal, termination and retirement benefits. Id. at 375. The bankruptcy court overruled the objection and determined that general unsecured creditors are entitled to priority over the "interests" of a retired partner. Id. at 381. Because the retired partner's claims arose from his capacity as a former partner, those claims were merely interests. Id. See also Carrieri v. Jobs.Com Inc., 393 F.3d 508, 525 (5th Cir. 2004)(a right to payment based upon an equity security or other interest in a debt arising from a capital contribution is not a claim); In re Georgetown Building Associates Ltd., 240 B.R. 124, 137 (interest arising from capital contribution are equity interests and cannot be recharacterized as debt).

20.     Counts Two and Ten of the Amended Complaint assert various torts against the SSC, the EC and the Law Firms, including breach of fiduciary duty, tortuous interference, conspiracy, successor liability and seeks an accounting from the Law Firms. As set forth herein, the Court can determine as a matter of law that all of these causes of action are property of the estate.[8]

21.     The filing of the bankruptcy petition pursuant to section 301 triggers the application of the automatic stay which ". . . operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate. . ." 11 U.S.C. § 362(a)(3). Property of a

---

[8] In prior pleadings, the RPCB Trust has asserted that the claims asserted by the RPCB may "not be asserted by a representative of the Debtor's estate." See Opposition to Motion to Stay at ¶ 33 (ECF Doc. #372); Objection to Estimation Motion (ECF Doc. #800) at 38. Whether or not the Plan Administrator is precluded under Wagoner from pursuing these claims is not the issue for estimation. Rather, the issue is whether the RPCB Claims should be valued at zero because the claims asserted in the Amended Complaint are property of the estate.

10

bankruptcy estate includes claims and causes of action in litigation. United States v. Whiting Pools, 462 U.S. 198, 205, n.9 (1983); In re Moore, 110 B.R. 924, 925 (Bkrtcy. C.D. Cal. 1990) ("[t]he scope of § 541 is broad and includes intangible property such as a cause of action.").

22. "State law determines which claims belong to the estate, and hence, can be asserted by the trustee." Goldin v. Primavera Familienstiftung, et al. (In re Granite Partners, L.P.), 194 B.R. 318, 324 (Bankr. S.D.N.Y. 1996)("Granite Partners"); see also St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc., 884 F.2d 688 (2d Cir. 1989). If, under state law, a cause of action belongs to the estate, the trustee has the exclusive standing to assert it. See Granite Partners, 194 B.R. at 324-25 (enjoining an action to prosecute waste, mismanagement and breach of fiduciary duty pending against the debtor's insiders by disgruntled creditors); see also iXL Enters. v. GE Capital Corp., 167 Fed. Appx. 824, 826 (2d Cir. 2006) (holding that section 541 properly allowed a debtor corporation to be substituted as plaintiff of an existing pre-petition derivative action because such a claim was property of the debtor's estate); Koch Ref. v. Farmers Union Cent. Exch. Inc., 831 F.2d at 1343; Keene Corporation v. Huffman et al. (In re Keene Corporation) 164 B.R. 844 (Bankr. S.D.N.Y. 1994)("Keene Corp."); AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.), 117 B.R. 789, 801 (Bankr.S.D.N.Y.1990).

23. Property of the bankruptcy estate includes any right of action the debtor corporation may have to recover damages against a corporate officer or director for "misconduct, mismanagement, or neglect of duty by a corporate officer or director." Delgado Oil Co. v. Torres, 785 F.2d 857, 860 (10th Cir. 1986). In other words, claims based upon breach of a fiduciary are enforceable by the trustee. See Keene Corp. 164 B.R. at 853. Pepper v. Litton, 308 U.S. 295, 307, 60 S.Ct. 238, 245-46, 84 L.Ed. 281 (1939); Hassett v. McColley (In re O.P.M. Leasing Services, Inc.), 28 B.R. 740, 759 (Bankr.S.D.N.Y.1983). New York's Business

11

Corporation Law §720 expressly authorizes a corporation or bankruptcy trustee to sue the corporation's officers and directors for breach of fiduciary duty, including misappropriation or diversion of assets.

24.     Property of the estate also includes any right that the debtor a shareholder suffers solely through a diminution in the value of their stock. Granite Partners, 194 B.R. at 325 (citing Vincel v. White Motor Corp., 521 F.2d 1113, 1118 (2d Cir. 1975)). Likewise, where a partner of a partnership claims that it is entitled to value which is derivative of the assets of the partnership, and that partner has suffered no individual harm apart from the harm suffered by the entire partnership, the claim belongs to the partnership. See N.Y. PARTNERSHIP LAW § 115 (McKinney's 2007); see also Strain v. Seven Hills Associates, 75 A.D.2d 360, 365-66, 369-70 (N.Y. App. Div. 1980) (quoting Klebanow v. New York Produce Exchange, 344 F.2d 294, 297 (2d Cir. 1965), and finding, outside the bankruptcy context, partners were not prohibited from taking a derivative action on behalf of the partnership)).

25.     In addition, property of the estate also includes claims against third parties who aid and abet the insiders' wrongful conduct. Lou v. Belzberg, 728 F.Supp. 1010, 1023 (S.D.N.Y.1990); Terrydale Liquidating Trust v. Barness, 611 F.Supp. 1006, 1015 (S.D.N.Y.1984); see also AmeriFirst Bank v. Bomar, 757 F.Supp. 1365, 1380 (S.D.Fla.1991); Restatement (Second) of Torts § 876 (1982).

26.     Successor liability claims are also property of the estate and creditors are precluded from pursuing those claims. See Keene Corp. 164 B.R. 844 (Bankr. S.D.N.Y. 1994); Audio Data Corp. v. Monus, 789 S.W.2d 281, 286 (Tex.Ct.App.1990). New York recognizes a claim for aiding and abetting as well. See e.g., Crowthers McCall Pattern, Inc. v. Lewis, 129 B.R. 992, 999 (S.D.N.Y.1991); Resnick v. Resnick, 722 F.Supp. 27, 37 (S.D.N.Y.1989).

12

27. Piercing the corporate veil or alter ego claims are property of the estate and creditors are precluded from pursuing those claims. See St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc. 884 F.2d at 701 (alter ego claims, "if proved, would have the effect of bringing the property of the third party into the debtor's estate, and thus would benefit all creditors.")..

28. To determine whether a claim asserted is property of the estate, a court must look to the nature of the wrongs alleged in the complaint without regard to the plaintiff's designation. Granite Partners at 325. See also Koch Ref. v. Farmers Union Cent. Exch., Inc., 831 F.2d 1339, 1349 (7th Cir.1987), cert. denied, 485 U.S. 906 (1988); In re E.F. Hutton Southwest Properties II, Ltd., 103 B.R. 808, 812 (Bankr.N.D.Tex.1989).

29. The Amended Complaint asserts that the Defendants engaged in a deliberate scheme of mismanagement, waste and breach of fiduciary duty in the 13 month period between the Debtor's decision on August 16, 2005 to wind-down and the filing for bankruptcy protection on September 22, 2006 and that the EC and the SSC engaged in acts of deliberate bankruptcy planning to shield partners from liabilities.[9] These actions are not specific as to the RPCB Trust. Rather, these allegations only allege indirect damage resulting from a global injury to the partnership. As such, they belong to the estate. See e.g., Mediators, Inc. v. Manney, 1996 U.S. Dist. LEXIS 14402, 12-13 (S.D.N.Y. 1996)("[a] fiduciary duty claim is not particular to any one creditor; to the contrary, the claim is general to all of them, since the alleged harm to each derives from direct harm to the corporate entity); Strain v. Seven Hills Associates, 75 A.D.2d 360, 371 (N.Y. App. Div. 1980)(discussing derivative causes of action in the partnership context). See Broome v. ML Media Opportunity Partners L.P., 273 A.D.2d 63, 64 (N.Y. App. Div. 2000) (finding an action by one partner against the partnership, a general partner, or any

---

[9] Compare ¶¶6-26 of the Committee's Trustee Motion (ECF Doc. #159) with ¶¶28-45 of the Amended Complaint.

ME1 7635741v.1

controlling entity was derivative in nature because no injury to the partner could be found to be distinct from an injury to the partnership).

30. The allegations asserted by the RPCB Trust are quite similar to those raised by creditors in the Keene bankruptcy. Keene Corporation v. Huffman et al. (In re Keene Corporation), 164 B.R. 844 (Bankr. S.D.N.Y. 1994). In that case, two actions had been filed (Coleman and Huffman) which named as defendants six former affiliates and seven individuals who were present or former officers, directors or shareholders of Keene or the affiliates. With respect to the Coleman Action[10], eight causes of action were raised as follows:

> The first two counts charge that the sale of Keene's assets to the five Bairnco subsidiaries constituted fraudulent conveyances under New York State law. The third count asserts successor liability '[b]ecause each of the related transferees knew or had reason to know of Keene's asbestos liabilities at the time of these transfers'…. The fourth count asserts tort liability based on piercing the corporate veil because the [defendants] 'exercised their domination and control of Keene and the other corporate defendants to denude and strip assets from Keene in violation of the [New York Debtor and Creditor law], to transfer those assets to the other corporate defendants, and to enrich themselves at the expense of Keene's … creditors.'
>
> The fifth and sixth counts allege a second generation of fraudulent transfers…Count seven alleges that the individual defendants breached their fiduciary duties to [the debtor and to the creditors] by 'denuding and stripping Keene of its assets and its profit making and growth potential.' (Coleman Complaint, ¶ 90). Finally, count eight charges a conspiracy among all defendants to 'defraud and denude Keene and to strip and dismantle its assets, as well as its potential for future profits and growth, so as to impair the right of Keene's asbestos creditors to recover for their injuries.'

Id. at 847-48.

31. With respect to successor liability/alter ego, the court determined:

> the remedy against a successor corporation for the tort liability of the predecessor is, like the piercing remedy, an equitable means of expanding the assets available to satisfy creditor claims. The class action plaintiffs

---

[10] The allegations in the Huffman complaint were substantially the same as the Coleman complaint.

14

ME1 7635741v.1

> that invoke it allege a general injury, their standing depends on their status as creditors of Keene, and their success would have the effect of increasing the assets available for distribution to all creditors. For the same reasons stated with respect to the piercing claims, claims based upon successor liability should be asserted by the trustee on behalf of all creditors.

Id. at 853.

32. After thoroughly analyzing the allegations in both the Huffman and Coleman Complaints, Chief Judge Bernstein concluded:

> In summary, Keene, in the first instance, is the only person with standing to assert the claims in the *Huffman* and *Coleman* cases, as well as any other claims, including but not limited to claims based upon fraudulent transfer, alter ego, successor tort liability or breach of fiduciary duty, which may have been asserted in other actions and share the following characteristics: (1) the claim alleges a general, indirect injury to the creditor, (2) the creditor's standing to sue the third party depends on its status as a creditor of Keene, and (3) the successful prosecution of the suit will increase the assets available to satisfy all creditor claims. The commencement or continuation of any actions concerning these claims is barred by the automatic stay.

Id. at 854.

33. Stretching to somehow distinguish these cases, the RPCB Trust asserts that its members' rights "arise not from their status as creditors of the Debtor, but from the unique and specific rights that they in particular had and which the Defendants obliterated." See Objection to Motion To Stay (ECF Doc. #800) at ¶30. This argument seems to suggest that the rights of the RPCB Trust arise from its members unique status as a former partner. That argument is unavailing. In Litman v. Prudential-Bache Properties, Inc., 611 A.2d 12 (Del.Ch.1992), the plaintiff limited partners sued the general partners charging breach of fiduciary duty. The limited partnership had been formed for the purpose of investing in first mortgage bonds. Id. at 13. The partnership invested nearly $135 million but the real estate projects suffered overruns and delays, and often failed to pay principal and interest required by the bonds. Id. at 14. The plaintiffs

15

alleged that the general partners "breached their fiduciary duties by inadequately investigating and monitoring the investments and by placing their interests in fees above the interests of the limited partners." Id. at 16.  The complaint did not allege an injury arising from the breach of a distribution agreement with the limited partners, but instead, that the **misconduct resulted in diminished income to the partnership, diminished distributions to the limited partners and diminished value to the limited partnership interests**. Id. (emphasis supplied).

34. The court concluded that the claims were derivative in nature, and belonged to the partnership rather than the limited partners. The diminished income represented a direct injury to the partnership, damaging the limited partners only to the extent of their proportionate interest in the partnership. Id.  The court noted that diminished distributions and diminished value of the interest in the partnership flowed from the direct injury to the partnership and none of the alleged injuries existed independently of the partnership or were inflicted directly on the limited partners. Id.  Accordingly, the claims were derivative in nature. Id. at 16-17; see also Lenz v. Associated Inns & Restaurants Co., 833 F.Supp. at 380-81 (transactions either unprofitable or involving self-dealing, that allegedly cause the limited partner lost income and diminished the value of his investment, are derivative); Abeloff v. Barth, 119 F.R.D. 332, 334 (D.Mass.1988) (general partners' failure to pursue partnership claims against others and their paying unreasonable management fees were derivative); Kramer v. Western Pac. Indus., Inc., 546 A.2d at 353 (mismanagement resulting in corporate waste through the dissipation of corporate funds alleges derivative claims that the shareholders experience only indirectly).

35. Similarly, in the bankruptcy of Eastern Air Lines, certain preferred shareholders ("Preferred Shareholders") brought suit against former officers and directors alleging breach of fiduciary duty and tortious interference with contract (the "Proposed Defendants").  See

16

<u>Sobchack v. American National Bank & Trust Company Of Chicago, et al.</u> (<u>In re Ionosphere Clubs, Inc.</u>), 17 F.3d 600 (2d Cir. 1994).  In ruling that the claims of the Preferred Shareholders against the Proposed Defendants were property of the estate, the Second Circuit noted that:

> Where the wrong committed by a third party consists of an injury inflicted on stockholders' rights rather than upon the corporation, the stockholders' action seeks relief awarded directly in their favor against the third party. A direct action would lie where third parties contrived to destroy or circumvent the participatory or commercial rights of certain stockholders in a manner that does no injury to the corporation, as where directors contrived to exclude certain stockholders from voting, or from participating in an advantageous offer.  <u>See, e.g.</u>, <u>Rabkin v. Philip A. Hunt Chemical Corp.</u>, 547 A.2d 963, 969 (Del.Ch.1986) (citing R. Franklin Balotti and Jesse A. Finkelstein, *The Delaware Law of Corporations and Business Organizations,* § 13.6, for proposition that direct claims lie where a proposed merger or other transaction unfairly affects minority shareholders). In such a case, the wrong can be rectified only by relief to that class of stockholder; because the corporation has not been injured, relief to the corporation would not cure the wrong. (footnote omitted)
>
> The [Preferred Claims] are very similar to the classic derivative action described above. The alleged wrongs of the Proposed Defendants consisted of the diversion of *Eastern's* assets. The only significant difference is that here the diversion of assets by the insiders was so extreme that the corporation was left bankrupt and unable to fulfil [sic] its contractual obligations, including the obligations to the Preferred holders. That difference, however, does not justify an action seeking payment directly to the Preferred holders. To the contrary, it provides additional reason why the recovery must be to the corporation rather than to the Preferred holders. Eastern is in bankruptcy, and the law provides for a strict order of priorities for the distribution of its assets. **If the Proposed Defendants were to pay damages directly to the Preferred holders rather than to Eastern's Estate, the Preferred holders would receive compensation for their foregone dividends while claimants senior in priority to them went unpaid, thus defeating the bankruptcy code's system of priorities.** On the other hand, a complete recovery by the corporation would rectify the injury suffered by the Preferred holders; were Eastern to recover the diverted funds and thus be restored to financial health, it would then be able to fulfill its contractual obligations to the Preferred holders.

<u>Id.</u> at 606.

17

ME1 7635741v.1

36.     The situation before the Court is quite analogous to the circumstances in Eastern. Based on the allegations in the Amended Complaint, it is clear that the claims of the RPCB Trust arise from the transfer of assets and other conduct which left Coudert bankrupt and unable to fulfill its contractual obligations. These actions were not particular as to the retired partners of the Debtors and, as such, the claims asserted by the RPCB Trust are derivative and belong to the estate.

37.     For the reasons identified above, the Court should determine that the RPCB Trust Claims are either Partner Profit Claims or claims that belong to estate. As such, the RPCB Trust Claims should be estimated at zero for voting and distribution purposes.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court estimate the value of the RPCB Trust Claims at zero for allowance and distribution purposes and grant such other and further relief as the Court deems just and proper.

Dated: August 17, 2008
      New York, New York

    McCARTER & ENGLISH, LLP
    Attorneys for the Official Committee of Unsecured
    Creditors of Coudert Brothers LLP

    /s/ David J. Adler
    David J. Adler  (DA-0048)
    Georgia A. Mallan (GM-2596)
    245 Park Avenue
    27th Floor
    New York, New York 10167
    (212) 609-6800 - Telephone
    (212) 609-6921 – Facsimile

ME1 7635741v.1